IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:10CR351 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| RYAN D. EINERSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the government's objection, Filing No. 46, to the Findings and Recommendation ("F&R") of the magistrate judge. *See* Filing No. 43, F&R; Filing No. 48, Transcript (Tr.) at 51-62. The magistrate judge recommended that the defendant's Motion to Suppress Evidence, Filing No. 24, be denied as to any evidence obtained prior to the conclusion of the protective sweep of the defendant's home, and granted as to evidence seized after the protective sweep of the defendant's home. Filing No. 43. The defendant has been charged with receipt and possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). Filing No. 1, Indictment.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a de novo determination of those portions of the F&R to which the defendant objects. *United States v. Lothridge,* 324 F.3d 599, 600-01 (8th Cir. 2003). The court has reviewed the record including the transcripts of the hearings on the motion to suppress on December 15, 2010, and January 11, 2011, and the exhibits, including the audio-recording of the 911 call. See Filing No. 45, Transcript (Tr. I) & Filing No. 48, Transcript (Tr. II); Filing No. 40, Exhibit (Ex.) List; Ex. 102 (911 call).

The magistrate judge found that police officers properly executed a protective sweep in response to a 911 call that involved a potentially dangerous situation, but that there was "no reason for the officers outside of consent to continue to be admitted into that house, and if they wanted additional information or items from within that house, they would have to get a search warrant." Filing No. 48, Tr. II at 56. The magistrate judge credited the testimony of law enforcement officers and found that the defendant was under the influence of drugs and hallucinating when he consented to the search and, therefore, his consent was not voluntary. *Id.* at 61.

## FACTS

The court accepts the magistrate judge's factual findings and they will be repeated here only as necessary to this opinion. Briefly, police responded to a 911 call involving a "break-in" and references to a gun and "shooting" at the defendant's house. Filing No. 48, Tr. II at 51- 62, Ex. 102 (911 call). When officers arrived at the scene, the defendant was outside the house and they observed him to be distraught, confused and irritated. *Id.* at 52. The officers conducted a protective sweep of the home and observed some plants and liquids. *Id.* Officers testified they were given verbal consent to search and later they obtained written consent to search from the defendant. *Id.* at 52-54. The officers found the weapon at issue in the cushions of the couch during a second search. *Id.* at 53.

The officers testified that the defendant appeared to be under the influence of a drug and was acting erratic, excited, nervous, paranoid and fidgety. *Id.* at 53-55. The defendant was pacing in the middle of the street and scratching his face. *Id.* He later made statements that led the officers to believe he was hallucinating. *Id.* at 55. At the time the second search was conducted, the defendant had been handcuffed and placed in the

police cruiser. *Id.* at 38. He was later arrested on an outstanding warrant for driving under suspension and failure to appear and was transported to the police station and booked. *Id.* at 40.

The government argues:

> while the defendant may have been "not normal" at the time of the consent, it was nonetheless a voluntary act on his part. He initiated the police contact. He alleged ongoing criminal activity in his home.  When asked to provide consent, he was a victim, not a target or an accused.

Filing No. 47, Government's Brief at 2.  Alternatively, it contends that exigent circumstances justified the search, in that "a crime was reported by the homeowner, as lives were being threatened by the homeowner, burglary suspects' escape would be imminent if the police simply left the area, and evidence of the reported burglary was likely to be destroyed or lost." *Id.*

## DISCUSSION

The court agrees with the magistrate judge's conclusion for the reasons stated in his opinion. The court finds the government's reliance on *Colorado v. Connelly*, 479 U.S. 157, 164 (1986), for the proposition that "a Defendant's mental condition, by itself and apart from its relation to official coercion, should never dispose of the inquiry into constitutional voluntariness" is misplaced. *See* Filing No. 47, Government Brief at 2.  That case involves the voluntariness of a confession in the context of Fourteenth Amendment/Fifth Amendment Due Process rights and the Fifth Amendment's protection against self-incrimination. *Connelly,* 479 U.S. at 167, 170.  Coercive police activity is a necessary predicate to the finding that <u>a confession</u> is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment. *Id.* at 167 (emphasis added).

The voluntariness of a waiver of the privilege against self-incrimination has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. *Id.* at 170 (stating that *"Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that"). The case has no application to the voluntariness of a consent to search under the Fourth Amendment. *See, e.g., United States v. Montgomery,* 621 F.3d 568, 573 (6th Cir. 2010) (noting that Fifth Amendment waiver and Fourth Amendment consent-to-search inquiries are not the same and that one difference is that the involuntariness prong of a *Miranda* waiver requires coercive police activity as a necessary predicate, something generally not required in Fourth Amendment consent cases).

When the government enters a defendant's home without a warrant, the court presumes that the search was unreasonable and therefore in violation of the Fourth Amendment. *United States v. Valencia,* 499 F.3d 813, 815 (8th Cir. 2007). This presumption is rebuttable "when the government demonstrates that exigent circumstances 'make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" *Id.* (quoting *Mincey v. Arizona,* 437 U.S. 385, 394 (1978); *see Welsh v. Wisconsin,* 466 U.S. 740, 750 (1984) ("Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries").

There has been no demonstration of any exigency in this case. The officers had conducted a protective sweep of the house. The house was empty and could be secured. The defendant had been handcuffed and detained in the police cruiser and was later

4

arrested and transported to the police station. There was no threat of imminent violence, emergency, or destruction of evidence. The proper course would have been for the law enforcement officers to obtain a warrant based on their observations. Accordingly,

IT IS ORDERED:

1. The government's objection (Filing No. 46) to the Findings and Recommendation of the magistrate judge are overruled.

2. The Findings and Recommendation of the magistrate judge (Filing No. 43) are adopted.

3. The defendant's Motion to Suppress Evidence (Filing No. 24) is denied as to any evidence obtained prior to the conclusion of the protective sweep of the defendant's home, and granted as to evidence seized after the protective sweep of the defendant's home.

Dated this 16th day of February, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

5